RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0171p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RODNEY HAMILTON HIGGINS, JR.,

*Defendant-Appellant*.

No. 24-5331

---

Appeal from the United States District Court for the Eastern District of Kentucky at London.
No. 6:21-cr-00061-1—Robert E. Wier, District Judge.

Decided and Filed:  June 27, 2025

Before:  THAPAR, NALBANDIAN, and READLER, Circuit Judges.

---

### COUNSEL

---

**ON BRIEF:**  Benton C. Martin, Keshava A. Kirkland, OFFICE OF THE FEDERAL COMMUNITY DEFENDER, Detroit, Michigan, for Appellant.  Amanda Harris Huang, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

---

### OPINION

---

THAPAR, Circuit Judge.  Rodney Higgins pled guilty to possession with the intent to distribute methamphetamine and fentanyl.  On appeal, he challenges the search that led to his arrest.  Because probable cause supported that search, we affirm.

I.

From June to August 2021, Rodney Higgins participated in a methamphetamine and fentanyl distribution ring. While officers were investigating Higgins and his co-conspirators, they used a confidential source to conduct two controlled buys of methamphetamine from Higgins.

As part of this investigation, a Drug Enforcement Administration task force officer prepared an affidavit in support of a search warrant for Higgins's apartment located at Rapid Run Drive. That affidavit detailed the officer's training and experience; how he came into contact with the confidential source; the confidential source's knowledge of Higgins's extensive drug dealing; Higgins's criminal history; the two controlled buys with the confidential source; and the location of the Rapid Run apartment and the fact that Higgins resided there.

The affidavit also recounted a text exchange between the confidential source and Higgins. The day before officers presented the magistrate judge with the warrant, Higgins texted the confidential source that he had "more clear" and "more of that slow." R. 177-8, Pg. ID 738. The confidential source, in turn, told law enforcement that "clear" was code for methamphetamine, and "slow" was code for "heroin, fentanyl, or a combination of the two." *Id.* Higgins had texted the source to come to Higgins's "crib," and also told the source over the phone to come to Higgins's apartment "to complete the transaction." *Id.* Based on all this information, a magistrate judge found probable cause and issued a warrant to search Higgins's apartment.

The search of Higgins's apartment turned up 370 grams of a substance that tested positive for methamphetamine and over 200 grams of a substance that tested positive for fentanyl. The government indicted Higgins for conspiracy to distribute methamphetamine and fentanyl and possession with intent to distribute methamphetamine and fentanyl. *See* 21 U.S.C. §§ 846, 841(a)(1). But Higgins moved to suppress the evidence that officers found while they searched his apartment. The district court denied that motion.

Higgins then pled guilty to the possession charge, but he reserved the right to appeal the district court's denial of his suppression motion. He preserved the right to appeal three

questions: (1) whether there was a sufficient nexus between his drug trafficking and residence to support the search warrant; (2) whether he was entitled to a hearing based on a claim that the affidavit contained misrepresentations or omissions; and (3) whether the good-faith exception to the exclusionary rule could save the search even if it lacked probable cause.

## II.

Probable cause is "not a high bar" to meet. *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation omitted). It requires only "a 'fair probability' that an officer will find contraband or evidence of a crime." *United States v. Whitlow*, 134 F.4th 914, 919 (6th Cir. 2025) (citation omitted). Further, there must be a "nexus" between the evidence sought and the place to be searched. *United States v. Sanders*, 106 F.4th 455, 460–61 (6th Cir. 2024) (en banc). That is, officers must provide "direct or circumstantial support to create 'more than mere suspicion' that contraband will be found at the location in question." *Id.* at 462 (citation omitted). This warrant met those requirements.

## A.

Start with the affidavit supporting the warrant. It showed that Higgins engaged in drug trafficking. And it linked Higgins's drug trafficking to his apartment. *See id.*

The affidavit began by reporting how officers zeroed in on Higgins: a confidential source had received about a pound of methamphetamine from Higgins. The officers then used that source to conduct two controlled buys of methamphetamine from Higgins. Further, the confidential source also stated that the source had received one pound or more of methamphetamine from Higgins "on at least 10 prior occasions." R. 177-8, Pg. ID 737. The affidavit also referenced Higgins's extensive history with drug dealing, including serving a seven-year sentence for trafficking in controlled substances.

And why did officers decide to search the River Run apartment? For one, Higgins resided there, as he was listed as a tenant at the apartment. That fact, coupled with evidence of Higgins's continual drug dealing, alone suffices to provide probable cause to search the apartment. *See Sanders*, 106 F.4th at 466 (resolving intra- and inter-circuit split and recognizing

that "probable cause to search a known drug dealer's residence is established where the dealer is engaged in continual and ongoing operations typically involving large amounts of drugs" (citations and quotations omitted)); *see also United States v. Simmons*, 129 F.4th 382, 387 (6th Cir. 2025) (recognizing known drug-dealer status can be established through extensive or repeated drug dealing, as well as a record of past drug convictions).

The affidavit had additional information establishing probable cause to search the apartment.  According to the affidavit, Higgins had texted the confidential source that he had obtained more "clear" and "slow," slang for methamphetamine and some combination of heroin and fentanyl, respectively.  R. 177-8, Pg. ID 738.  The next day, Higgins directed the source to come to his "crib."  *Id.*  And when law enforcement instructed the source to place a recorded phone call to Higgins, Higgins directed the source to come to his apartment to complete the drug transaction.  That same day, the officers applied for a warrant to search the apartment in question.  All told, Higgins was an active drug dealer who had just directed his repeat customer to come to his residence to buy drugs.  This all creates a "fair probability" that contraband would be found in Higgins's apartment.  *Sanders*, 106 F.4th at 462.

## B.

Higgins's arguments to the contrary are unavailing.

He first argues that there wasn't enough of a connection between the drug sales and his apartment because officers never saw him travel to or from his apartment during a controlled buy.  But officers didn't have to observe Higgins selling from his apartment.  Indeed, there's "no model fact pattern for establishing a fair probability that contraband will be found" at a given place.  *Id.*  Instead, the officers just had to show a connection between the place to be searched and the illicit activity.  *See id.*  And here, officers established that a known drug dealer resided at a particular location and had told a repeat customer to come to his "crib" and get more drugs.  R. 177-8, Pg. ID 738.  That is more than enough to create a "fair probability" of contraband in Higgins's apartment.

Higgins also observes that the most recent controlled buy took place fifty-five days before the search.  In his view, the information derived from the controlled buys was too

outdated to support probable cause. *See United States v. Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009).

But if information in an affidavit is "in some respects stale," more recent activity can "refresh this otherwise stale information." *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (cleaned up). That's exactly what happened here. The affidavit showed that Higgins texted that he had drugs a day before police applied for and executed the warrant. And Higgins told the source the day of the search to come to his apartment to complete the transaction. Even assuming the earlier controlled buys were stale, the texts Higgins sent just one day before the warrant was executed refreshed the allegedly outdated information and provided probable cause to search his apartment.

Further, Higgins objects that the text and phone messages did not "provide any evidence of drugs being present in the residence." Appellant Br. at 26. But probable cause does not require officers to have ironclad evidence that contraband will be present before they conduct a search. Rather, all it requires is a fair shot of finding contraband. And here, officers had a confidential source who had repeatedly bought drugs from Higgins and understood Higgins's code to mean that Higgins was prepared to sell drugs from his apartment. The officers didn't need to wait for Higgins to say the magic words of "methamphetamine" or "fentanyl" to have probable cause to search his residence.

Finally, Higgins criticizes the affidavit as resting on "conclusory statements" that probable cause existed. Appellant Br. at 28. He relies on *United States v. Lewis*, where this court found an affidavit insufficient because it stated only that the suspect "had used his laptop to view images of child sexual exploitation." 81 F.4th 640, 646–47 (6th Cir. 2023). Here, though, the affidavit detailed a months-long investigation into Higgins's drug trafficking and supplied direct quotations from Higgins's interactions with the confidential source.

In sum, Higgins's probable-cause challenges fail.

III.

Next, Higgins contends that the district court erred in denying him a hearing to assess whether the affidavit contained misrepresentations or omissions.

In certain limited circumstances, a defendant is entitled to a hearing to challenge the truthfulness of factual statements in a search warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Our circuit has expanded these circumstances to allow defendants to show misrepresentations or omissions. *See United States v. Davis*, 84 F.4th 672, 681–82 (6th Cir. 2023). For a hearing based on an alleged misrepresentation, a defendant must "make a substantial preliminary showing that the affidavit contains a knowing, intentional, or reckless falsehood," and "that the affidavit would not have established probable cause without the falsity." *Sanders*, 106 F.4th at 471 (citation omitted). And if a defendant is trying to show an omission, he must meet an even higher standard: that the officer omitted the information "with an intention to mislead" and that the omission was "critical to the finding of probable cause." *Davis*, 84 F.4th at 682 (citations omitted).

In evaluating whether an affidavit contains misrepresentations or omissions, warrants are presumed valid, and the district court enjoys significant discretion. This court reviews for clear error a district court's determination as to whether an officer intentionally misled the magistrate or acted with reckless disregard for the truth. *See United States v. Bateman*, 945 F.3d 997, 1007–08 (6th Cir. 2019). And review of a district court's legal conclusions is de novo. *Id.*

Higgins provides various reasons why he should've been entitled to a *Franks* hearing.

First, Higgins claims the government misled the magistrate judge into thinking he was offering drugs in the text exchange with the confidential source. The crux of Higgins's argument is that the government failed to preserve the text messages cited in the affidavit that he "got more clear and . . . got more . . . slow," so the government misled the magistrate judge into thinking Higgins was selling drugs from his apartment. R. 177-8, Pg. ID 738.

This argument fails. Even though the government never revealed the text messages, Higgins has no evidence to suggest that the officer was *lying* when he summarized the messages

for the magistrate judge.  *See Sanders*, 106 F.4th at 471.  Given that courts presume warrants are valid, Higgins's claim fails at the outset—he hasn't made a "substantial preliminary showing" of a knowing or intentional falsehood.  *See Bateman*, 945 F.3d at 1008 (citation omitted).  Instead, he's just pointed to an absence of particular evidence (the text messages themselves) to corroborate the confidential informant's account.

What's more, other text messages in the record corroborate the officer's summary of the messages.  When the confidential source began cooperating with law enforcement, for example, the source asked if Higgins "had 1 [the source] could get."  R. 180-4, Pg. ID 802.  Higgins replied, "Oh of the *clear*?  Like the whole thing?"  *Id.* (emphasis added).  That Higgins used the same coded language as reported in the affidavit lends credibility to the officer's summary.  Further, the day after Higgins claimed to the confidential source that he "got more clear," the source followed up over text and the two arranged a meet-up at Higgins's "crib."  R. 180-7, Pg. ID 814.  This timeline suggests that the exchange the officer summarized indeed took place.  All to say, Higgins has no evidence that the officer falsely summarized any text messages, and record evidence suggests otherwise.

Higgins also contests that the officer "present[ed] his own interpretation" of Higgins's coded language "as a fact" to the magistrate judge.  Appellant Br. at 32–33.  But that's not an allegation that the affidavit contained a knowing or reckless falsehood.  *Sanders*, 106 F.4th at 471.  On the contrary, the officer had a sound basis for this interpretation:  the confidential source, who had bought drugs from Higgins at least twelve times, told law enforcement what Higgins's coded language meant.

Further, Higgins zeroes in on the affidavit's language that the confidential source "was in Higgins's residence on one occasion" when he "saw a duffle bag full of meth."  R. 177-8, Pg. ID 737.  Higgins claims that the affidavit omitted that this "residence" was his former residence and not his current apartment.

Because Higgins alleges an omission, however, he must show the omission was "critical" to the probable-cause determination.  *Davis*, 84 F.4th at 682 (citation omitted).  He can't make that showing.  Why?  Higgins's texts and phone call just before the execution of the search

warrant were sufficient to establish probable cause.  To be sure, the fact that the source saw a duffel bag "full of meth" at Higgins's former residence increased the probability that his current residence also contained contraband.  R. 177-8, Pg. ID 704.  But the warrant's issuance did not hinge on this detail.

Finally, Higgins quibbles with the affidavit's statement that Higgins was seen leaving and returning to his apartment.  He argues that the way the affidavit appended this observation to the description of the drug transaction makes it seem like he was seen leaving and returning to his apartment as part a drug deal.  But this claim fails:  Higgins doesn't argue that the statement that he was seen leaving and returning to his apartment is false, let alone intentionally or recklessly so.  *See United States v. Henderson*, No. 23-1786, 2024 WL 3549582, at *5 (6th Cir. July 26, 2024) (rejecting a similar challenge to an affidavit that "merely recount[ed] [the defendant's] movement and access").

\*        \*        \*

Thus, we affirm.