NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0531n.06

Case No. 24-3839

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 19, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| SHEDRICK HAWKINS, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SUTTON, Chief Judge; CLAY and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Defendant Shedrick Hawkins pled guilty to possession with intent to distribute fentanyl and cocaine, as well as being a felon in possession of a firearm, after police executed a search warrant at his residence. The affidavit supporting the search stated that police conducted a trash pull outside Hawkins's residence, which discovered residue of cocaine, fentanyl compound, or methamphetamine. The affidavit also contained significant corroborating evidence connecting Hawkins to drug trafficking, including that police witnessed Hawkins leave his residence and immediately return home following a suspected drug transaction. It further detailed how police uncovered messages between Hawkins and a known drug trafficker in which they shared videos of marijuana and discussed drug prices and meeting locations. On appeal, Hawkins argues that the district court erred in denying his motion to suppress because the search warrant was not supported by probable cause and lacked a nexus between his residence and the evidence sought. We affirm the judgment of the district court.

**I.**

In April 2023, the Franklin County Sherriff's Office Special Investigations Unit received a complaint stating that James Crockett was selling drugs in Columbus, Ohio. The complaint also shared Crockett's Facebook profile. Detective Christina Goble[1] contacted Crockett on Facebook Messenger, arranging for several controlled buys with Crockett in April and May 2023.

On May 9, 2023, an undercover detective ("UD") arranged to buy one ounce of cocaine from Crockett. When the UD arrived at the meeting location, Crockett asked the UD to drive him to pick up the drugs. Crockett then contacted multiple individuals, including someone at the telephone number 614-808-5022 ("PN5022"), whom he agreed to meet at a new location. Someone in a maroon Nissan Maxima was waiting for the UD and Crockett when they arrived at the designated location. After receiving a call from the holder of PN5022, Crockett got out of the UD's car and entered the Maxima. About five minutes later, Crockett exited the Maxima with a bag containing a white powdery substance, which later tested positive for cocaine, and entered the UD's vehicle, exchanging the bag for $700. After witnessing the sale, police began surveilling the Maxima, which they followed back to 327 Highview Landing. A registration search of the Maxima revealed that the vehicle's registered owner was Spectrum Motor 1 LLC ("Spectrum"). A cellphone ping warrant for PN5022 also indicated that PN5022 had been in the same area as the Maxima during the sale.

Three days later, Goble executed a warrant to place a GPS tracker on the Maxima, which was now parked nearby at 314 Highview Landing. The car was later moved to the Spectrum car

---

[1] Detective Christina Goble's affidavit supported the search warrant of Hawkins's residence at issue here. At the time Goble executed the affidavit, she had been employed by the Franklin County Sheriff's Office since October 2018 and had been assigned to the Special Investigations Unit since April 2023.

dealership parking lot, where it remained from May 20 to May 23. On May 23, Goble returned to 314 Highview Landing to further surveil the property[2] and found a Dodge Charger located in the same spot where the Maxima had been parked. Goble's investigation revealed that the Charger was registered to Hawkins and that Hawkins lived at 314 Highview Landing. During her surveillance, Goble discovered two other cars—a white Dodge Durango and a silver Chevrolet Malibu—parked in the same spot as the Maxima and Charger at 314 Highview Landing. The Durango was registered to Spectrum, while the Malibu was registered to both Hawkins and Spectrum. Hawkins posted a picture of himself on Facebook in front of a white Dodge Durango, which looked similar to the Durango that Goble saw at 314 Highview Landing.

On May 26, a Franklin County municipal judge issued a search warrant for Crockett's cellphone. Goble executed that warrant and found Facebook messages between Hawkins and Crockett where they shared videos of marijuana and discussed drug prices and meeting locations. The affidavit did not give more specific details about Hawkins's messages with Crockett, such as the quantity of drugs trafficked and the extent of their communications. On the same day, Goble observed Hawkins leave his apartment, which caused PN5022 to transmit location signals consistent with Hawkins's movement.

On June 5, Goble saw Hawkins leave 314 Highview Landing carrying a pink trash bag and a white bag with red lettering, both of which he threw out in his property's community dumpster. After Hawkins left, Goble and another detective immediately checked the dumpster and retrieved the bags, which were the only pink bag and white bag with red lettering they saw in the dumpster.

---

[2] Goble asserted that, "based on [her] training and experience as well as the training and experience of other law enforcement officers, drug traffickers will regularly change the vehicles in which they are operating" in order "to hinder individuals, including law enforcement, from associating the drug trafficker and the vehicle which is being used to further the trafficker's criminal activity for extended periods of time." DE 57-1, Search Warrant, Page ID 152.

Police discovered a "clear plastic bag containing residue of a white powdery substance" inside one of the bags, which later tested positive for cocaine, fentanyl compound, or methamphetamine. DE 57-1, Search Warrant, Page ID 154.

The next day, Goble observed Hawkins leave the area of 314 Highview Landing in a white Ford Explorer and followed the car to 2351 Taylor Avenue. When Hawkins arrived, an unknown male exited the home and approached the Explorer's passenger front window. The man walked away from the car holding a brown bag about two minutes later.[3] Goble followed Hawkins directly from the suspected drug transaction back to 314 Highview Landing.

Based on these facts,[4] police obtained a warrant to search Hawkins's residence for evidence related to suspected drug trafficking. After executing the search warrant, police seized four firearms, 1,197 grams of fentanyl, 1,806 grams of cocaine, approximately $17,775.00 in cash, drug paraphernalia, firearm magazines, and boxes of ammunition. Soon after, Hawkins was indicted on one count of possession with intent to distribute 400 grams or more of fentanyl and 500 grams or more of cocaine ("Count One"), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi), and 841(b)(1)(B)(ii), and one count of being a felon in possession of a firearm ("Count Two"), in violation of 18 U.S.C. §§ 922(g)(1) and 924(a).

---

[3] Goble stated that, "[b]ased on [her] training and experience and the training and experience of others[,] individuals with substance abuse issues and[/]or engaging in criminal activity will meet with drug traffickers briefly as observed[,] which is indicative of a suspected narcotics transaction." *Id.* at 154.

[4] Goble also asserted that, "[b]ased on training and experience, as well as training and experience of other Detectives, [Goble] knows that persons involved in criminal activity, including drug trafficking, will meet with other individuals in public areas such as a parking lot for short periods of time, drive multiple vehicles, and do not have assets listed in their names. Investigators know this type of activity is indicative of drug trafficking." *Id.* at 155.

Hawkins moved to suppress the evidence seized from the search of his residence. He alleged that the search warrant was not supported by probable cause and that it lacked a nexus between his residence and the evidence sought. The district court denied Hawkins's motion, holding that "the totality of the circumstances established a strong nexus between illegal drugs and Mr. Hawkins's apartment." DE 62, Op. & Order, Page ID 184. Because the district court found that probable cause existed, it did not apply the good-faith exception.

Hawkins then entered a plea agreement where he pled guilty to Count One and Count Two of his indictment but reserved the right to appeal the district court's denial of his motion to suppress. The district court sentenced Hawkins to 135 months in prison on both counts, served concurrently, as well as five years of supervised release on Count One and three years of supervised release on Count Two, also served concurrently. Hawkins timely appealed, challenging the district court's denial of his motion to suppress.

## II.

"In appeals from a district court's ruling on a motion to suppress evidence, we review the trial court's factual findings for clear error and its legal conclusions de novo." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). "Given the de novo standard of review, where, as here, the district court reviewed the [issuing judge's] probable cause determination, we owe the district court's conclusion no particular deference." *United States v. Brown*, 732 F.3d 569, 572–73 (6th Cir. 2013). But in our review of a probable cause determination, we "pay[] great deference to [an issuing judge's] findings, which should not be set aside unless arbitrarily exercised." *United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004) (quoting *United States v. Leake*, 998 F.2d 1359, 1362–63 (6th Cir. 1993)).

**III.**

Under the Fourth Amendment of the United States Constitution, a search warrant can only issue upon "probable cause." U.S. Const. amend. IV. To establish probable cause, the government must show a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1988)). Such a nexus "exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). A reviewing court's assessment of probable cause "is limited to the information presented in the four corners of the affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).

This is "not a difficult standard to meet." *United States v. Whitlow*, 134 F.4th 914, 919 (6th Cir. 2025). Therefore, in the search warrant context, "it follows that a warrant's validity should not turn on whether it is supported by an 'actual showing' of criminal activity at the targeted location," but on "whether officers provided direct or circumstantial support to create 'more than mere suspicion' that contraband will be found at the location in question." *Sanders*, 106 F.4th at 462 (quotations omitted). This analysis is "holistic," *id.* at 463, and requires courts to focus on the "totality of the circumstances" rather than scrutinizing an affidavit in a "hypertechnical" or "line-by-line" manner, *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)).

Here, Goble's affidavit established a sufficient nexus between Hawkins's drug dealing activities and his residence. "It is well established in this Circuit that drug paraphernalia recovered from a trash pull establishes probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes." *United States v. Abernathy*, 843 F.3d 243, 251–52 (6th Cir. 2016). Goble saw Hawkins leave 314 Highview Landing carrying two distinctive trash

bags and throw those bags away into a community dumpster. Goble and another detective then immediately retrieved those bags, which contained drug residue. Goble's affidavit also established significant corroborating evidence connecting Hawkins to drug trafficking, including that Hawkins left a controlled buy and returned to the 327 Highview Landing area, that Hawkins left from 314 Highview Landing and immediately returned home after a suspected drug transaction, and that Facebook messages between Crockett and Hawkins suggested Hawkins was actively engaged in drug trafficking. As the district court summarized, the affidavit included ample circumstantial corroborating information:

> (i) Mr. Crockett had contacted the user of PN5022 to buy drugs to sell to the UC; (ii) PN5022 had multiple cellphone pings at 314 Highview Landing during [police surveillance]; (iii) Mr. Crockett got cocaine from the driver of the Maxima; (iv) the Maxima drove to the apartment complex at 327 Highview Landing after the May 9 controlled buy and was found parked at 314 Highview Landing a couple of days later; (v) multiple cars, including the Maxima, switched in and out of the same parking spot at 314 Highview Landing within few days, consistent with someone involved in drug activities; (vi) Mr. Hawkins was the registered owner of at least three of those four cars; (vii) Facebook communications between Mr. Hawkins and Mr. Crockett discussed narcotics prices and meeting locations and shared pictures of marijuana; (viii) Mr. Hawkins left 314 Highview Landing to engage in suspected drug activity—he drove to another house, handed a brown bag to a man, and then went back to his apartment; and (ix) cellphone pings for PN5022 were consistent with Mr. Hawkins's movement and suspected drug sales.

DE 62, Op. & Order, Page ID 183–84.

The contrast between Goble's affidavit and the affidavit in *Abernathy* underscores that there was probable cause here. In *Abernathy*, we held that drugs found in a trash pull outside the defendant's house "were insufficient, *standing alone*, to create probable cause to search [the] Defendant's residence." 843 F.3d at 256–57 (emphasis added). Because the police did not see the defendant throw out the relevant trash bags, "there [was] no way of knowing with certainty that the trash pull evidence . . . (i) came from Defendant's residence at all; or (ii) if it did, that it was in the residence recently." *Id.* at 254–55. We explained that "[t]he inability to tell when drugs were

last in the home diminishes any inference that drugs were still in the home." *Id.* at 255. Moreover, we expressly distinguished other cases finding probable cause where "the warrant application either contained corroborating evidence tying the defendant to drug activity in addition to the trash pull evidence, or [where] the police recovered more evidence from the trash pull than was present here." *Id.* at 256. Here, Goble saw Hawkins discard the trash bags containing the drugs and therefore knew with certainty that the contraband had recently come from Hawkins's home. And, as noted earlier, the affidavit contained significant evidence connecting Hawkins to drug trafficking. Indeed, we have found affidavits containing similar evidence to establish probable cause in other cases. *See, e.g.*, *Marcilis v. Twp. of Redford*, 693 F.3d 589, 600–01 (6th Cir. 2012) (probable cause to search residence where police recovered "torn, clear, plastic bags" containing substances that tested positive for cocaine and marijuana in trash pull, "police officers observed multiple instances of suspected drug transactions involving" plaintiff, and plaintiff "made trips to the [residences] during these transactions"); *United States v. Talley*, 692 F. App'x 219, 222 (6th Cir. 2017) (probable cause to search residence where trash pull uncovered small amount of marijuana in sealed bag, detectives smelled odor of unburnt marijuana emanating from home during investigation several days earlier, and suspect had an extensive criminal history, including a drug trafficking conviction).

Hawkins's arguments to the contrary are unpersuasive. Hawkins first argues that even though police had probable cause to arrest him for drug possession and that the trash pull evidence suggested someone at 314 Highview Landing used drugs, these facts do "not create an inference that the apartment contained additional drugs." CA6 R. 24, Appellant Br., at 11–13. Specifically, he contends that there was no nexus to his residence because police did not observe any sales, controlled buys, or deliveries that occurred at 314 Highview Landing. But police did not need to

"observe [Hawkins] selling from his apartment." *United States v. Higgins*, 141 F.4th 811, 816 (6th Cir. 2025). Nor did the police need "ironclad evidence that contraband [would] be present before" conducting a search. *Id.* We instead judge the affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). And here, the affidavit contained sufficient information to establish "a fair shot of finding contraband" in Hawkins's residence. *Higgins*, 141 F.4th at 816.

Second, Hawkins argues that Goble improperly invoked her training and experience to "fill in . . . gaps in critical facts," including that the Taylor Avenue interaction was a suspected drug transaction. CA6 R. 24, Appellant Br., at 13–14. But courts may consider "an officer's 'training and experience' . . . in determining probable cause." *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994); *accord United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) ("[C]ourts may afford considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found." (internal quotation marks omitted)). While "training and experience . . . cannot substitute for the lack of evidentiary nexus," *Schultz*, 14 F.3d at 1097 (internal quotation marks omitted), there is no lack of evidentiary nexus here. Goble's extensive investigation revealed a positive trash pull, Hawkins travelling directly from 314 Highview Landing to a suspected drug transaction and then returning immediately home, and Facebook messages between Hawkins and Crockett where they discussed drug trafficking.

In sum, Goble's affidavit contained sufficient information to establish a "fair probability" that evidence of drug activity would be found at Hawkins's residence. *Sanders*, 106 F.4th at 461 (quotation omitted). Moreover, "[b]ecause we find that the warrant was supported by probable

cause, we need not address the issue of whether the good faith exception would apply." *United States v. Dyer*, 580 F.3d 386, 393 (6th Cir. 2009).

## IV.

For the foregoing reasons, we affirm the judgment of the district court.